IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BOBBY MEAD, and KARRIE MEAD, <br><br> Plaintiffs, <br><br> vs. <br><br> UNION PACIFIC RAILROAD COMPANY, A Nebraska Corporation; and ART BECKER TRANSPORTATION LLC, <br><br> Defendants. | 8:23CV170 <br><br> **MEMORANDUM AND ORDER** |

Before the Court is Union Pacific's ("U.P.'s") first and second Motions for Partial Summary Judgment (Filing No. 60; Filing No. 101), Motions to Exclude expert testimony (Filing No. 95; Filing No. 98), and Motion for Leave to File Additional Motions in Limine (Filing No. 141). Bobby and Karrie Mead ("the Meads") sued under state law negligence and strict liability theories after a collision between his truck and U.P.'s train and invoked the Court's federal question jurisdiction. The parties litigated this case for two years but never questioned whether the Court had jurisdiction. The Court concludes it lacks jurisdiction and must dismiss. Specifically, the parties are not diverse and the Meads' state law claims, though premised on violations of federal railroad safety regulations, do not arise under federal law.

The underlying facts are simple: a train hit a truck. U.P., a Utah corporation headquartered in Nebraska, owned and operated the train. Filing No. 1 at 2, ¶ 2. Bobby Mead, joined in the cabin by his wife, Karrie Mead, drove the commercial truck. Id. at 3, ¶ 17. The Meads live in Cozad, Nebraska. Id. at 2, ¶¶ 2–4. The crash occurred at the intersection of a rail line and an unnamed service road on the outskirts of Cozad. Id. at

1

1. The Meads and the train entered the intersection at the same time. *Id.* The train struck the front of cab inches from where the Meads were sitting. *Id.* They are lucky to have survived.

Because the accident involved a train—rather than a car, dog, or patch of ice—the law governing the Meads' claim was more complicated than an average tort claim. Specifically, Congress determined that railroads should be subject to a single body of safety standards rather facing a regulatory environment that changed every time a train crossed state lines. Frank J. Mastro, *Preemption Is Not Dead: The Continued Vitality of Preemption Under the Federal Railroad Safety Act Following the 2007 Amendment to 49 U.S.C. S 20106*, 37 Transp. L.J. 1, 3–4 (2010). To accomplish this goal, Congress passed the Federal Railroad Safety Act ("FRSA").

The FRSA tasked the Department of Transportation with promulgating a comprehensive set of safety standards. 49 U.S.C. §§ 20103, 20106. The regulations are detailed, addressing everything from the type of traffic control devices at rail crossings (49 C.F.R. pt. 236) to when, and for how long, the train must blow its horn (49 C.F.R. pt. 222). To ensure the DOT regulations are the only safety standards for railroads, Congress expressly preempted certain state laws. 49 U.S.C. § 20106. Specifically, "states may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." *Id.* § 20106(a)(2). In other words, once the Secretary regulates in an area, the regulation, not state law, sets the standard of care for the railroad.

In 2007, after a well-publicized train derailment, Congress grew concerned that the federal courts were applying the FRSA's preemption provision too broadly. Mastro, *supra* at 12–13. Specifically, courts held that the FRSA preempted not only state law claims alleging violations of state law standards but also state law claims alleging violations of the federal law standards embodied in the Secretary's regulations. *See e.g. Lundeen v. Canadian Pac. Ry. Co.*, 447 F.3d 606, 611 (8th Cir. 2006); *Mehl v. Canadian Pac. Ry., Ltd.*, 417 F. Supp. 2d 1104, 1116 (D.N.D. 2006). Concerned this left victims of train accidents without a remedy, Congress clarified § 20106 does not "preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party . . . has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation." 49 U.S.C. § 20106(b). Basically, the 2007 amendments allow a plaintiff to bring a state law tort claim based on a railroad's failure to comply with DOT regulations. But Congress did not open the doors to federal court for rail accident claims, providing "[n]othing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action." *Id.* § 20106(c).

Against this backdrop, the Meads' sued U.P. in federal court asserting two claims under Nebraska state law. One, a negligence claim asserting U.P. breached its duty of care by failing to comply with federal railroad safety regulations. Filing No. 1 at 6–11, ¶¶ 55–91. Two, a claim asserting U.P. was strictly liable for injuries at railroad crossings. *Id.* at 11–14, ¶¶ 92–113. The Meads submitted the Court had subject matter jurisdiction because their claim arose "under the . . . laws . . . of the United States." *Id.* at 3, ¶ 15; 28 U.S.C. § 1331. U.P. did not question whether the Court had jurisdiction. Instead, the

parties litigated the case on the merits for two years, engaging in extensive discovery and motion practice. See Filing No. 140 (order on final pretrial conference detailing outstanding issues).

But, on review of U.P.'s arguments for partial summary judgment, the Court developed doubts. So, it ordered supplemental briefing on the issue of subject matter jurisdiction. U.P. argues the Court lacks subject matter jurisdiction. Filing No. 143. The Meads maintain the Court has federal question jurisdiction. Filing No. 144.

## LEGAL STANDARD

Subject matter jurisdiction is the Court's "statutory or constitutional power to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Federal courts are courts of limited jurisdiction. *Thigulla v. Jaddou*, 94 F.4th 770, 773 (8th Cir. 2024). If the Court acts outside the limited subject matter jurisdiction granted by the Constitution or Congress, it exceeds its authority. *Id.* These limits are "inflexible and without exception." *Id.* (quoting *Patchak v. Zinke*, 583 U.S. 244, 254 (2018)). Thus, a challenge to subject matter jurisdiction "can never be forfeited or waived." *Cotton*, 535 U.S. at 630. Nor can parties consent to federal jurisdiction. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850–51 (1986) ("[P]arties by consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III.").

"[C]hallenges to subject matter jurisdiction may be raised by the defendant 'at any point in the litigation,' and courts must consider them *sua sponte*." *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 548 (2019) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). The Court has an independent duty to determine subject matter jurisdiction at all stages in the litigation, even if neither party raises the issue. *Wisconsin Dep't of Corr.*

4

*v. Schacht*, 524 U.S. 381, 382 (1998) ("No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own.").

## DISCUSSION

The Court lacks subject matter jurisdiction and must dismiss. U.S. Const. Art. III § 2 empowers the federal courts to hear a limited class of cases, including claims "arising under" federal law and state law claims between residents of different states. Congress codified these bases for jurisdiction in 28 U.S.C. § 1331 (federal question) and § 1332 (diversity).

### A. Diversity Jurisdiction

The Court does not have diversity jurisdiction. 28 U.S.C. § 1332(a)(1) grants jurisdiction over state law disputes between "Citizens of different States." A corporation is a citizen of the state where it is incorporated and the state where it has its "principal place of business," i.e., the state where the corporation is headquartered. 28 U.S.C. § 1332(c)(1). Diversity jurisdiction requires, subject to exceptions not relevant here, complete diversity, meaning no plaintiff can be domiciled in the same jurisdiction as any defendant. *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Here, the Meads live in Nebraska and U.P. is headquartered in Nebraska. So, this action does not involve a dispute between "Citizens of Different states" and 28 U.S.C. § 1332 does not provide a basis for jurisdiction.

### B. Federal Question Jurisdiction

The Court does not have federal question jurisdiction. 28 U.S.C. § 1331 grants jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." A case arises under federal law if: (1) the case is brought under a federal

5

cause of action, or (2) the case involves "a substantial question of federal law." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC*, 843 F.3d 325, 329 (8th Cir. 2016). The Meads' claims do not fall within either bucket.

### *Federal Cause of Action*

The Meads' claims do not arise under a federal cause of action. "'[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action' . . . 'either expressly or by implication.'" *Great Lakes Gas Transmission Limited Partnership*, 843 F.3d at 329 (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) & *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979)). Here, the Meads' claims for negligence and strict liability arise under state common law – not a federal statute. Even if the Court takes the approach suggested in the Meads' supplemental brief (Filing No. 144 at 3), and construes state law claims as arising under federal rail safety regulations, the FRSA does not create a federal cause of action. Congress was clear: "[n]othing in" the FRSA "creates a Federal cause of action on behalf of an injured party." 49 U.S.C. § 20106(c). And the Court cannot imply a federal cause of action where Congress expressly stated there is none. *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001) (stating "[s]tatutory intent . . . is determinative" when it comes to implied causes of action). In sum, the Meads do not fall within the first bucket of federal question jurisdiction because federal law did not create their cause of action.

### *Substantial question of federal law*

The Meads' claims do not involve "a substantial question of federal law" even though their state law claims are premised on violations of federal regulations. The

Supreme Court's decision *Merrell Dow Pharm. Inc.* resolves this case. 478 U.S. 804. There, like here, the plaintiffs sued under a state law negligence theory alleging the defendant did not comply with federal safety regulations (in that case pharmaceutical labeling regulations, in this one rail safety regulations). *Merrell Dow Pharmaceuticals Inc.*, 478 U.S. at 811–12. The Supreme Court held there was no jurisdiction under 28 U.S.C. § 1332 because "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Id.* at 817; *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005) (reaffirming *Merrell Dow*'s treatment of "garden variety state tort law"). *Merrell Dow* controls because the only federal issues here are violations of the FRSA regulations as an element of a "garden variety" state tort claim and the FRSA does not create a private cause of action. *Grable & Sons Metal Products, Inc.*, 545 U.S. at 318. So, while the FRSA's preemption provision requires the Meads to couch their state law claims in terms of federal regulatory law, Congress nevertheless intended for these state law claims to proceed in state court. 49 U.S.C. § 20106(c) ("[n]othing in this section . . . confers Federal question jurisdiction for such State law causes of action."). Thus, the Meads' claims do not fall within the second bucket of federal question jurisdiction.

Other courts who have addressed state law claims premised on violations of FRSA regulations have uniformly come to the same conclusion. *See e.g. Hampton v. R.J.*

7

*Corman R.R. Switching Co.*, 683 F.3d 708, 713–14 (6th Cir. 2012); *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1095 (S.D. Ill. 2007) (collecting cases).[1]

Seeking to avoid this conclusion, the Meads contend: (1) their reliance on federal rail safety regulations and (2) public policy interest in uniform interpretation of these regulations is sufficient to create a "substantial federal issue" and confer federal question jurisdiction. Filing No. 144 at 3-4. Both arguments were considered, and rejected by, the Supreme Court in *Merrell Dow*. The Supreme Court rejected the first argument on separation of powers grounds because "the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." 478 U.S. at 814. In other words, if the federal judiciary opened the courthouse doors to these kinds of state law claims, they would overstep their role and nullify Congress's decision not to recognize a federal cause of action. *Id.* The Supreme Court rejected the second argument on similar grounds, and added any risk to uniformity is "considerably mitigated" because the Supreme Court "retains power to review the decision of a federal issue in a state cause of action." *Id.* at 815–16. So, neither of the Meads' arguments provide any reason to break from the other courts who have concluded they do not have federal question jurisdictions over similar train accident claims.

---

[1] For examples from district courts in the Eighth Circuit *see Peters v. Union Pac. R. Co.*, 455 F. Supp. 2d 998, 1006 (W.D. Mo. 2006); *Connolly v. Union Pac. R. Co.*, 453 F. Supp. 2d 1104, 1109–11 (E.D. Mo. 2006); *G.R. ex rel. Joyce v. Union Pac. R. Co.*, No. 107 CV 171 LMB, 2009 WL 3248213, at *2–4 (E.D. Mo. Oct. 6, 2009). For a more recent example *see Stevenson v. Fort Worth & W. R. Co.*, No. 3:15-CV-0625-B, 2015 WL 3884645, at *2 (N.D. Tex. June 24, 2015).

The parties are not diverse, and the Meads' claims do not arise under federal law. Therefore, the Court lacks the power to decide this case and must dismiss it.

## CONCLUSION

This conclusion is undoubtedly frustrating for the Meads and U.P. who have put years of time and effort into litigating this case. But parties cannot expand subject matter jurisdiction of the federal courts by acquiescence and the Court has an obligation to consider subject matter jurisdiction at each stage of the litigation. Finding none, IT IS THEREFORE ORDERED:

1. The case is dismissed without prejudice. The Court will enter a separate judgment terminating the case.
2. U.P.'s pending motions are denied as moot.

Dated this 24th day of March, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge